PROVOSTY, J.
This is a revocatory action brought in the parish of Acadia to set aside a mortgage upon real estate situated in that parish. The defendant mortgagee resides in the parish of Calcasieu, and claims that the suit should have been brought there.
The Code of Practice establishes as a general rule that suits must be brought in the court of the domicile of the defendant. Article 162. But it recognizes numerous exceptions to that rule. Articles 163, 164, and 165. Speaking generally, these exceptions may be said to embrace what at common law are called “local” actions, as contradistinguished from “transitory” actions; the former being those actions in which “the subject or thing to be recovered is in its nature local” (Bouvier L. Diet. Yo. Action), or, in other words, has a permanent situs. This division of actions is not known to the civil law, but it is convenient, and may serve to illustrate; and, besides, our Code of Practice is not derived solely from the civil law, but also, in many of its features, from the common law. Usually only those actions which have for their object immovable property or property in custodia legis are included among local actions; but by the amendment of 1876 (Act 64, p. 106) to article 163 of the C. P., suits for provisional seizure and sequestration have been included. The general theory of this classification of actions is that the court of the place where the property is situated can more conveniently deal with it, and that in such actions it is the property which, so to speak, is the real, or at any rate the main, defendant. And so we find that by said amendment of 1876 to article 163, C. P., the effect of the judgment in such cases is confined to the property provisionally seized or sequestered. The judgment cannot operate in personam beyond the amount of the property actually seized.
This distinguishing feature of these actions, of operating in rem only, not in personam, characterize also the revocatory action, the actio Pauliana of the Roman law, since this action has not for its object the obtaining of a personal judgment against the defendant, but solely the restoration to the estate of the debtor of the property fraudulently transferred by him; and, although this action is not specifically mentioned by the Code of Practice among local actions or those which need not be brought at the domicile of the defendant, we have no doubt at all but that this action does fall within that classification when it has for its object the setting aside of a sale of real estate. It is then clearly an “action in revendication of real property,” and comes within the express terms of article 163, O. P.
It is not then distinguishable in principle from an action en declaration de simulation, which has been held by this court to be an action in revendication, and local in character. Edwards v. Ballard, 20 La. Ann. 169; Maduel v. Tuyes, 30 La. Ann. 1404. The basis of these two decisions is that in such a case the property is being revendieated, sought to be brought back into the estate of the debtor, in order that the plaintiff may exercise his rights upon it, and that reason applies with equal force to a revocatory action having for its object the setting aside of a sale.
Dalloz, Rep. de Legis. Vo. Action, par. 85, p. 22, discusses the question as follows:
“Must we recognize the same distinction relatively to the actio Pauliana, or the demand in nullity of alienations and acts of the debtor in *267 fraud of his creditors? If the property involved is a movable, the action will be personal, and will have to be brought before the court of the domicile of the debtor, or of those who have participated in the fraud, in accordance with the principle that movables follow the person of the defendant. But if the property involved consists of an immovable or of immovable rights, the question becomes very serious. For it may be said, on the one hand, that in such a case the action does not tend to cause the property to come into the estate of the suing creditor, but solely to obtain the annulment of the act by the effect of which it has gone out of the estate of the debtor, and that therefore the .action of the creditor does not include a revendication of the property, but would appear to be of a purely personal character all the more from the fact that the creditor is suing in his own right, and not in the exercise of any right of his debtor. Notwithstanding these reasons,. we think that in such a case the actio Pauliana must retain its mixed character; that is to say, of an action personal against a thing, which character we saw above belonged to it in the Roman law. Very true., in the revocatory action the creditor acts in his own right, and not in that of his debtor; but, while this right has for its cause the obligation which rests upon the defendant resulting from his fraud, does it not at the same time have for its object the restoration of the property to- the estate of the debtor, there to become again the common pledge of his creditors? The fact that the property is made to go' out of the hands of the third possessor shows that there is a revendication of it. It matters little whether the property falls back into the estate of the debtor or accrues to the creditors; the possession which the debtor will have of it will be only as a deposit constituting the common pledge of his creditors. This is why the Roman, law classes the actio Pauliana among personal actions against the thing. It is because it follows the thing into whatever hands it may pass that it was held to be a real as well as a personal actipn, in other words, mixed — a character which it has preserved to this day.”
The revocatory actio is a local action at common law. Thus:
“Although there are authorities to the contrary, the general rule is that an action to set aside a fraudulent conveyance of real, estate must be brought in the county in which the land is located, although the judgment was recovered, and the debtor lives, in another county.” 20 Oyc. 710.
And this term “conveyance” includes a mere contract of security, such as a mortgage or conditional sale. Id. 391, 3,92.
For all practical purposes — in fact, in principle — there can be little, if any, ground for a distinction between the revocatory action to set aside a sale and the same action to set aside a mortgage in respect of the latter being equally in rem purely, not in personam, and therefore' local. Nothing is then being demanded of the defendant mortgagee, but the sole object of the plaintiff is to get at the property of the mortgagor, his debtor, precisely the same as when a sale is being sought to be annulled. So true is this that the Civil Code makes no distinction between the judgment to be rendered in the one case and that to be rendered in the other; but makes but one and the same provision for all revocatory actions indiscriminately. It says:
“Art. 1977. The judgment in this action, if maintained, shall be that the contract be avoided as to its effects on the complaining creditors, and that all the property or money taken from the original debtor’s estate, by virtue thereof, or the value of such property to the amount of the debt, be applied to the payment of the plaintiff.”
Very true, in the case of a mortgage the title remains in the debtor, whereas in the case of a sale it does not; but what difference does this make when the mortgage empties the title of all value so far as the recourse of the plaintiff against the property is concerned, this value being what the plaintiff is after by his revocatory action? In the one case as much as in the other “this action can only be exercised when the debtor has not sufficient property to pay the debt of the complaining creditor.” O. O. 1971.
In the one case as much as the other the effect of success in the suit is to invest the plaintiff with a right to be paid by preference out of the proceeds of the property recovered (or uncovered, as the case may be), when it comes to be sold. State Nat Bank v. Monroe, 39 La. Ann. 834, 2 South. 605.
While mortgage does not transfer the title, nor even a dismemberment of it, it nevertheless creates a real right upon the property. O. O. art. 3282. And to that extent it is an alienation of it. And that is why the legal capacity to mortgage must be the same as *269 that to alienate. C. C.- art. 3300. Mortgage is just as efficacious as sale for putting property beyond the reach of a creditor. And in the case of a mortgage as much as in the case of a sale what is effected by success in the revocatory action is to bring back the property itself within the reach of the complaining creditor.
Then, again, the suit of the pledgee to recover possession of the thing pledged is a suit in revendication. Pothier, de la Propriété, par. 290. Now, while an ordinary creditor is not exactly a pledgee, and does not seek in a revocatory action to recover the possession of the pledge, yet he in such an action, even where the obnoxious contract aimed at is a mortgage, is, to a certain extent, exercising the rights of a pledgee; for “whoever has bound himself personally is obliged to fulfill his engagements out of all his property,” and “the property of the debt- or is the common pledge of his creditors,” and “every act done by a debtor with the intent of depriving his creditor of the eventual right he has upon the property is illegal.” O. C. arts. 1969, 3182, 3183.
The judgment appealed from is set aside, the plea to jurisdiction is overruled, and the case is remanded to be proceeded with according to law; the appellee to pay the costs of this appeal.