The **CHATEAU LAFAYETTE APARTMENTS, INC.**, Plaintiff-Appellee,

v.

The **MEADOW BROOK NATIONAL BANK**, Defendant-Appellant.

No. 27110.

United States Court of Appeals Fifth Circuit.

June 24, 1969.

Rehearing Denied July 17, 1969.

Jerry A. Brown, D. Douglas Howard, New Orleans, La., Monroe & Lemann, New Orleans, La., for appellant.

Bob F. Wright, Lafayette, La., R. Paul Greene, Baton Rouge, La., Domengeaux, Wright & Bienvenu, Lafayette, La., for appellee.

Before AINSWORTH, and GODBOLD, Circuit Judges, and DAWKINS, District Judge.

DAWKINS, District Judge:

This appeal arises from denial by the United States District Court for the Western District of Louisiana, the Honorable Richard J. Putnam, Judge, of appellant's motion to dismiss for improper venue.

June 25, 1965, appellee executed a $463,000 note, payable to bearer, in monthly instalments. The note was secured by a real mortgage on appellee's apartment house in Lafayette, Louisiana. February 27, 1967, appellee filed this action against appellant in the District Court, alleging that the interest rate charged upon the loan was usurious and requesting judgment ordering appellant to refund all interest paid and declaring all future interest payments uncollectible. Initially, the action was dismissed for improper venue, the Court holding that, since the action was transitory, 12 U.S.C. § 94 [1] required that appellant, a national

1. "Actions and proceedings against any association under this chapter may be had in any district or Territorial court of the United States held within the district in

bank, be sued only in the county where it was "established" or "located," that is, Nassau County, New York.

With leave of Court, appellee filed an amended complaint. Therein appellee prayed that the mortgage note and the mortgage itself " * * * be cancelled and erased from the public records of Lafayette Parish." In the alternative, appellee prayed that the mortgage and mortgage note be ordered reformed, to delete any encumbrance upon the immovable property with regard to the allegedly usurious interest charge.

Thereafter appellant renewed its motion to dismiss, for improper venue. Reversing its earlier action, the Court denied the motion, holding that the amended complaint stated a local action, making venue proper.[2] Following the District Court's certification of the presence of a " * * * controlling question of law as to which there is substantial ground for difference of opinion * * * ", etc., it issued its order for an interlocutory appeal under 28 U.S.C. § 1292(b). A panel of this Court thereafter granted appellant's application for leave to appeal.

Under its well settled construction,[3] 12 U.S.C. § 94[4] requires that a national bank, such as appellant here, must be sued upon a transitory action where it is "established" or is "located." As noted, however, in Casey v. Adams the Court held that the statute had no application to a local action. As the Court pointed out in Casey, "Local actions are in the nature of suits *in rem*, and are to be prosecuted where the thing on which they are founded is situated."[5]

The sole issue here, then, is whether appellee, after amending its complaint as described, stated a local, rather than a transitory, action. Believing as we do, that the action here, at least in great measure, is a local one, we affirm.

Appellant places its greatest reliance upon Michigan National Bank v. Robertson, *supra*. There the respondent had purchased house trailers in Nebraska, executing and delivering notes and lien instruments to a local dealer, who in turn negotiated them to petitioner, a national bank located in Michigan. Thereafter, that respondent had sued that petitioner in Nebraska State Court, alleging violation of the Nebraska Installment Loan Act, and challenging the validity of the documents involved in the transaction.

Urging application of 12 U.S.C. § 94, the petitioner there contended, *inter alia*, that the venue of the Court was improper; but the Nebraska Court rejected this contention, one of the reasons given being that the action was local rather than transitory.

The United States Supreme Court granted certiorari and remanded the judgments. In answer to the argument that the local action exception, as carved out by *Casey*, was applicable, the Court said:

> " * * * The applicable Nebraska venue statute on its face allows suit in more than one county and, in the case of foreign corporations such as petitioner, Nebraska Revised Statute § 25—408 appears to permit suit in any county where the defendant can be found. By its very nature, this is a considerably different kind of suit from the one to determine interests in property at its situs which was involved in Casey v. Adams. * * * "[6]

As we appreciate the applicable Louisiana venue statute, the action here could

---

which such association may be established, or in any State, county, or municipal court in the county or city in which said association is located having jurisdiction in similar cases."
Casey v. Adams, 102 U.S. 66, 26 L.Ed. 52 (1880), held that this statute applies only to transitory, and not local, actions.

2. See note 1, *supra*.

3. See Michigan National Bank v. Robertson, 372 U.S. 591, 83 S.Ct. 914, 9 L.Ed.2d 961 (1963) ; Mercantile National Bank at Dallas v. Langdeau, 371 U.S. 555, 83 S.Ct. 520, 9 L.Ed.2d 523 (1963).

4. See note 1, *supra*.

5. Casey v. Adams, 102 U.S. at 68.

6. Michigan National Bank v. Robertson, 372 U.S. at 593–594, 83 S.Ct., at 915.

**304**

be brought in only one place, namely, the Parish where the mortgaged real property was located.

■ Article 80 of the Louisiana Code of Civil Procedure establishes mandatory venue for "an action to assert an interest in immovable property, or a right in, to, or against immovable property." Such an action "shall be brought in the parish where the immovable property is situated." While we are able to find no Louisiana decisions directly in point,[7] we have little doubt that the action here, which by virtue of the amended complaint, seeks in major part to have a mortgage on immovable property in part "cancelled and erased from the public records of Lafayette Parish," and seeks to have "the mortgage * * * ordered reformed," is an action "to assert an interest in immovable property, or a right in, to, or against immovable property"; hence, the action could be brought in but one Parish, and, in this diversity case, that would be the Lafayette Division of the District Court.

Moreover, the effect of the remedy sought in *Casey* and the one claimed here virtually were the same. In *Casey*, complete cancellation and erasure of secured

mortgages on immovable property was sought; here, although the action arose under circumstances not exactly the same as those in *Casey*, total or partial cancellation, reformation, and erasure of a mortgage on immovable local property is sought.

■ In Louisiana, unlike the situation in some commonlaw jurisdictions, 59 C.J. S. Mortgages § 1(2), where a mortgage is granted upon immovable property, title to the property remains in the mortgagor; and may be taken from him only upon a default on his part as to the terms of the mortgage or note paraphed therewith (identified together by a Notary Public, before whom the act of mortgage is executed) which would justify foreclosure proceedings to be followed by a public sale. La.Civil Code of 1870; Fidelity Credit Company v. Winkle, 251 La. 1, 202 So.2d 280 (1967); Thompson v. Calcasieu Trust & Savings Bank, 140 La. 264, 72 So. 958 (1916); Gates v. Gaither, 46 La.Ann. 286, 15 So. 50 (1894). See generally La.Code of Civil Procedure, Articles 2631–2754, 3741–3743.

■ We are unpersuaded by appellant's argument that appellee *could have* sued simply *in personam* upon the under-

7. Looking, as we must, to the law of the forum state, see 1 Moore Federal Practice, § 0.142 [2.–1], at pp. 1455 et seq., particularly at p. 1461, fn. 40, we note that in Louisiana, a mortgage on immovable property is a "real right." Article 3282, La.Civil Code of 1870:

"Art. 3282. The mortgage is a real right on the property bound for discharge of the obligation.

"It is in its nature indivisible and prevails over all the immovables subject to it, and over each and every portion.

"It follows them into whatever hands they pass."

See also Landry v. Hawkins, 156 So. 2d 795 (La.App.1st Cir. 1934). And an action for enforcement or reformation of a mortgage clearly is a *real* action, which is entirely local, not transitory, in nature. See generally, Louisiana Code of Civil Procedure, Title II, Real Actions. See also Yiannopoulos, Civil Law of Property, § 141 (1966), at pp. 428, 429:

"In addition to the remedies available to the owner of immovable property or holder of an immovable real right under

the nominate real actions of the Code of Civil Procedure, relief is also available under numerous innominate actions based on the Civil Code, the Code of Civil Procedure, or the jurisprudence of the courts. * * * Under the Code of Civil Procedure the owner of immovable property and the holder of immovable real rights have at their disposal the remedies of sequestration, declaratory judgment, and injunction. * * * Finally, ownership and real rights on immovables may be adjudicated in a number of nonstatutory 'fringe' or 'quasi-real' actions, such as the action of trespass, *the action to remove a cloud from title*, and the action of specific performance." Footnotes omitted. (Emphasis added.)

For a comprehensive analysis of classifications of actions as "real" or "personal" under Louisiana law, which terms roughly correspond to the common law concepts of "rights *in rem*" and "rights *in personam*," see Yiannopoulos, Civil Law of Property, § 135 (1966).

lying mortgage note, which would have rendered the action transitory rather than local.[8] What appellee *actually* did by its amended complaint, not what it *could* have done, must control proper characterization of the action. Although it may be said to be "mixed," under Louisiana law *concepts,*[9] no Solomonic split of the action's two prime components—(1) nullifying usury and (2) effecting reformation of the note *and* mortgage—can be effected. Each depends upon the other; and one of its primary effects, if appellee ultimately prevails, will be upon the real property subject to the mortgage.

Nor are we at all shaken in our conclusion by appellant's argument, in the same vein, that we should look beyond the plain language of appellee's amended complaint which prays for total or partial cancellation and erasure of the *mortgage* and reformation of the *mortgage*, and view this action as one which seeks no more than cancellation of the underlying mortgage *note*. It is true, as appellant urges, that under Louisiana law, a mortgage is "accessory" to the primary obligation which the mortgage note evidences.[10] Thus when the "principal debt is extinguished, the mortgage disappears with it." [11] But this does not mean that when a part of the primary obligation is extinguished, the mortgage vanishes from the public records affecting immovable property.[12] Nor does it mean that a mortgage-debtor cannot sue to cancel or reform a mortgage note and concurrently, as is the case here, to cancel and erase from the public records the mortgage in whole or in part. The two components of this action, so interwoven as they are, literally are inextricable from one another, and appellee's real rights under local law, as asserted here, are governed by Louisiana's procedural rules, which in this sense are both procedural and substantive, *i. e.,* the procedural aspects involved are an essential part of appellee's substantive rights.[13]

8. The District Court so held when it first dismissed appellant's complaint, prior to amendment, for improper venue. *Cf.* 1 Moore, Federal Practice, § 0.142 [2.1–1], pp. 1459–1461 (2d ed. 1964) ; Yiannopoulos, Civil Law of Property, § 135, p. 409 (1966).

9. Louisiana Code of Civil Procedure, Art. 422 :

"A personal action is one brought to enforce an obligation against the obligor, personally and independently of the property which he may own, claim, or possess.

"A real action is one brought to enforce rights in, to, or upon immovable property.

"A mixed action is one brought to enforce both rights in, to, or upon immovable property, and a related obligation against the owner, claimant, or possessor thereof."

10. Articles 1771, 3284, 3285, La.Civil Code of 1870.

11. *Ibid.,* Article 3285.

12. *Ibid.,* see Articles 3371–3385.

13. An analogous situation is found in Mire v. Sunray DX Oil Company, 285 F.Supp. 885 (W.D.La.1968), (a decision remanding that case to the State Court, from which no review was sought), wherein the same District Judge whose decision is under review here, considered the nature of the rights of a mineral lessee. There, *after carefully analyzing the Louisiana jurisprudential rules and Codal Articles,* as interpreted by the Louisiana Supreme Court, he concluded that rights obtained by a mineral lessee are incorporeal *real* rights, conferring upon the lessee rights *upon* the land, but not rights *in* the land.

While Beutke v. American Securities Co., 132 Cal.App.2d 354, 282 P.2d 201 (1955) and Vaughan v. Roberts, 45 Cal. App.2d 246, 113 P.2d 884 (1941), may appear to be squarely contrary to these views, as well as to our holding here, they involved interpretation and application of California law in their resolution of a "local" versus "transitory" cause of action.

Since, as noted, we here are *Erie*-bound to apply Louisiana substantive and procedural concepts (this being a nonfederal case, and achievement of nationwide uniformity being thus of no moment). those decisions are inappropriate to our disposition of the issue here presented. *Cf.* F.R. Civ.P., Rule 69(a), and 28 U.S.C. § 1962, which require local law to be applied in foreclosure proceedings, in the absence of any positive federal law to the contrary. See also 28 U.S.C. § 2001 *et seq.*

For the reasons given, therefore, the judgment is

Affirmed.

AINSWORTH, Circuit Judge (dissenting):

Section 94 of Title 12, U.S.C., precludes a party from bringing an action against a national bank in any federal court except within the district where the bank is established. However, in Casey v. Adams, 102 U.S. 66, 26 L.Ed. 52 (1880), the Supreme Court fashioned an exception to this general provision for "local" actions. This exception was not created, however, for the purpose of undermining an explicit congressional mandate with the vagaries of state property law. Rather, as a practical matter, if the relief sought were such that only a court with jurisdiction over the res could grant it, and if Section 94 placed venue elsewhere, no federal court would be able to adjudicate an *in rem* claim against a national bank. Bruns, Nordeman & Co. v. American National Bank & Trust Co., 2 Cir., 1968, 394 F.2d 300, 304 (Friendly, J.). The considerations which underlay Casey v. Adams, supra, are not present here. Appellee seeks only to alter the nature of his contractual relationship with appellant, and not to alter the nature of the cloud on its title. Obviously, the relief sought involves real property, and, indeed, ultimately it will affect real property, but this is not the test for determining whether the action is local or transitory. The relief sought is not *in rem*, it is not in the property itself, and hence a federal court in New York, where the bank is established, could grant appellee relief without having jurisdiction over the res. Michigan National Bank v. Robertson, 372 U.S. 591, 83 S.Ct. 914, 9 L.Ed.2d 961 (1963). See generally 1 Moore, Federal Practice ¶ 0.142[2–1], pp. 1455, 1456 (2 ed. 1964). Under these circumstances, I would hold that this action is transitory and governed by Section 94.

1. I entertain some doubt as to the propriety of applying state rather than federal law to the issue of whether an action of this kind against a national bank is transitory

The Louisiana Civil Code of 1870 makes it clear that a mortgage is an "accessorial right" to the loan note which is the primary evidence of indebtedness. Louisiana Civil Code Articles 1771, 3284, 3285. Thus an action to reform the terms of the underlying debt is a personal action and not one to place or remove an encumbrance on the real property itself. Cf. West v. Lehmer, 115 La. 213, 38 So. 969 (1905).[1]

I would reverse the judgment of the lower court.

or local. 1 Moore, Federal Practice ¶ 0.142 [2.–1], p. 1462 (2 ed. 1964). See also Pasos v. Pan American Airways, 2 Cir., 1956, 229 F.2d 271.